On a previous hearing of the controversy herein, we fully stated the pleadings and issues, a repetition of which is necessary, as follows, La. App., 24 So.2d 655:
"The plaintiff, Sarah B. Osborne, filed a suit against the Mossler Acceptance Corporation and the Sheriff of Vernon Parish to recover the sum of $5,500 as damages which she claims resulted to her because of the illegal and invalid seizure by the said Sheriff of a house trailer occupied by her and her husband and their two children. She alleges that the seizure was made under an illegal executory proceeding instituted by the said Acceptance Corporation against her husband, which seizure was finally decreed to be illegal by this court in accordance with the opinion reported in La. App., 14 So.2d 492; that the Sheriff or his deputies, accompanied by a representative of the said Acceptance Corporation, in the absence of her husband, came to the place where the house trailer was parked and moved the trailer, dispossessed her and her children, and removed the furniture and household effects from the trailer; that the seizure was made in the day time and in the presence of a large number of her acquaintances, all of which caused her great embarrassment, humiliation, mental shock and emotional disturbances; that she was in poor health at the time said illegal seizure was made, and she was greatly shocked and her nervous condition was aggravated and her physical condition was made worse. Her claim for damages is based on the humiliation, mental pain and suffering and physical disabilities which she claims were caused by the said illegal seizure.
"The other plaintiff, Thelbert E. Osborne, the husband of Sarah Osborne, in a separate suit, claims damages against the same defendants on account of the said illegal seizure in the sum of $6733.90 made up of various items, including humiliation and mental pain and suffering, medical expenses for attention to his wife, loss of time, damage to the trailer and certain household effects, rent paid for a place for himself and family while the trailer was under seizure, attorneys fees in having the illegal seizure set aside, and other items of damage not necessary to mention.
"The defendant, Acceptance Corporation, filed an answer admitting the seizure of the house trailer and also admitting that the seizure was held to be illegal, but it alleged that the seizure was made under a note and chattel mortgage executed by said Thelbert E. Osborne in the State of Texas on which there is a balance due of $1,363.50, interest and attorneys fees, and reconvened against Osborne and asked for a judgment against him for the amount of *Page 454 
said note, interest and attorneys fees, with recognition of its lien and privilege under the chattel mortgage. The defendant also urged against this plaintiff a plea of estoppel against his claim for damages by reason of certain provisions in the chattel mortgage giving the holder of the note the right to take possession of the trailer without any legal proceedings in case default was made in the payment of the note.
"The cases were consolidated for the purpose of trial and a judgment was rendered in favor of Thelbert E. Osborne and against the Acceptance Corporation for damages for the illegal seizure of the trailer in the sum of $410.75, and the plea of estoppel filed by this defendant was overruled. There was judgment in favor of the Acceptance Corporation against this plaintiff on the reconventional demand for the sum of $1363.50, with 10% per annum interest and 15% attorneys fees, and the lien and privilege of the said defendant was recognized on the trailer, the amount of the judgment in favor of the plaintiff to be allowed as an off-set against the judgment in favor of the defendant on the reconventional demand. The suit of Sarah B. Osborne was dismissed. The plaintiffs took separate appeals from the judgments."
[1] On motion of the defendant Mossler Acceptance Corporation, we dismissed the appeals. See La. App.,24 So.2d 655. The Supreme Court granted writs and reversed our decision, reinstating the appeal and remanded the cases to us for further proceedings. See 210 La. 1048, 29 So.2d 58. As to the suit of Mrs. Sarah Osborne, the evidence shows that she was, prior to the seizure, at the doctor's office for the purpose of obtaining medicine or medical care for herself. Upon her return from the doctor's office, the two deputy sheriffs and the representative of the defendant informed her of their mission. She begged them to await her husband's return home. One of the deputies telephoned her husband. Thereupon the trailer was moved to the highway and then removed to a neighbor's house. One of the deputies obtained the consent of the proprietor of this house to allow the furniture to be removed from the trailer to the house, storing the furniture within the house and upon the porch. She was, prior to the seizure, in a nervous state, under the care of physicians. The seizure was made in an orderly manner, without abuse or mistreatment to her in any respect. The seizure, in so far as the evidence shows, did not in any way affect her pre-existing physical condition. It is to be noted that she did not offer the testimony of any doctor or doctors to show that her pre-existing physical condition was aggravated. The judgment of dismissal of the suit will be affirmed.
[2] As to the suit of Thelbert S. Osborne, the evidence shows that he obtained the services of Mr. J.S. Picket, a practicing attorney of Many, La., for the purpose of obtaining an appeal from the order of executory process and such other appearances necessary thereto. After the obtainment of the order of appeal and its perfection, the services of his attorney were performed in this court. We feel that the award of $125 to cover such services plus his attorney's expenses in attending and submitting the case at Lake Charles, as allowed by the trial court, to be ample and adequate and not warranting an increase.
[3] As to the award of $285.75 made to the plaintiff by the trial judge for room rent for himself and his family while his trailer was under seizure and for his deprivation of its use, we find the only evidence relative thereto to be the testimony of plaintiff himself. He testified that he paid $3.75 per week for 30 weeks at Hornbeck, or the sum of $112.50 as house rent for his family, and that he paid $5.50 per week from February until July, as room rent for himself at Sulphur, for some twenty weeks, or the sum of $110, which makes a total of $222.50. There are no definite dates given in order to definitely fix the number of weeks. He further testified that a fair weekly charge for parking privilege of a trailer is $3 to $3.50 per week. He did not testify as to what he was paying per week for parking privilege at Hornbeck prior to the seizure. Then, under his testimony, even had the trailer not been seized, he would have been obliged to pay for parking privileges at least of $3 per week, or 75¢ less than he testified that he had to pay for house rent for his family. In other words, he had an increase of 75¢ for *Page 455 
30 weeks, or $22.50. We therefore feel that an award of $132.50, that is, $22.50 as house rent for his family, and $110 as room rent for himself is ample and sufficient under the evidence as contained in the record.
[4] As to his claim of $3 per day for his meals while living separate and apart from his family at Sulphur, we find that he had to eat regardless of where he was. It may have been cheaper for him to live at home, but he has not sufficiently proven the difference in the costs. To us, his demand is highly inflated. It cannot be allowed.
As to his claim of $42 supposedly incurred for special medical attention and of $14.50 for medicines, etc., for his wife, he has failed to produce bills therefor or produce testimony of the doctor or doctors whom he employed showing these expenses were caused solely by the seizure of the trailer, or that the seizure of the trailer aggravated the previous existing physical condition of his wife. The items are too remote, too indefinite and too vague to be allowed.
In his petition, he asks for $122.80 for loss of time, expense and annoyance, and $210 for additional travelling expenses as the result of the seizure. In his testimony, he states that the amount of $122.80 constituted incidental expenses such as damage to personal property, making trips as the result of the seizure, etc. In another part of his testimony, he states that he estimates the special trips he made from Sulphur to Hornbeck for the purpose of visiting his family cost him approximately $210. These items seem to be duplications. Furthermore, his testimony with regard thereto is too vague, too general and too indefinite to warrant an award.
[5, 6] As to his claim for vexation and embarrassment on account of the seizure, the plaintiff strenuously relies on the cases of Jones v. Dietrich, La. App., 186 So. 881, and Saia v. Phœnix Building Homestead Ass'n, 182 La. 844,162 So. 640, as a basis for an award. In each of these cases, the action for damages arose out of the illegal seizure of property belonging to third persons, while in our case it is based on the seizure of property belonging to the debtor of plaintiff, defendant in this action. The plaintiff in our case was the defendant debtor in the case of Mossler Acceptance Corporation v. Osborne, La. App., 14 So.2d 492. Furthermore, the defendant in this case, plaintiff in the case supra, was in good faith and proceeded under a document signed by this plaintiff and in which it believed gave it the right to proceed as it did. It was merely wrong in invoking the procedure of executory process without authentic evidence. The cases relied upon by the plaintiff are clearly inapposite to our case. To the contrary, we hold that the well settled rule to the effect that when a defendant in a main suit obtains an injunction against a seizure of his property, damages are not recoverable, fully applies to this case. See Oxford v. Colvin, 134 La. 1094, 64 So. 919; Fallin v. J. J. Stovall Sons, Ltd., 141 La. 220, loc. cit., on rehearing, 234(5), 74 So. 911, 916 and the cases cited therein. We do not see any distinction between the release of a seizure by injunction process and a release of a seizure by an appeal from an executory order. His claim is therefore disallowed.
We now pass to the consideration of defendant's reconventional demand.
Plaintiff admits that he signed the note, the document termed a Texas Chattel Mortgage and the purchase order contract, the basis of the former suit and the basis of the reconventional demand in this suit. The note is dated September 18, 1942, and the first installment was due on October 21, 1942, in conformity with the purchase order contract. From the endorsement on the note and the chattel mortgage, it appears that Stephens, the original payee of the note and the mortgagee according to the chattel mortgage, transferred the note and mortgage to the defendant herein on the date of the note. Plaintiff further admits that prior to September 25, 1942, and prior to the maturity of the first instalment of the note, he was advised by the defendant that they held his note secured by chattel mortgage and also admit receiving a schedule of payments in accordance with the note. Thus, it can readily be seen that the evidence shows that the defendant, plaintiff in reconvention, acquired the note prior to the maturity and for a valuable consideration. *Page 456 
[7] While plaintiff contends that the note and mortgage were altered as to the payments after he signed it, yet he admits that he signed the note and mortgage and has failed to prove that the present holder had any knowledge of any defects or irregularities in the note and mortgage. In fact, from the tenor of his letter of September 25, 1942, he absolves the defendant of any knowledge of any alterations. He states "As for me I am going into the law suit with him (Stephens) about the trailer * * * So it seems like we are all dealing with a crook." He bases his contention on a "rental agreement and option of purchase", dated July 13, 1942, wherein he rented the trailer from Stephens by paying Stephens $208 in cash for the first week, and thereafter $43.20 per week for the next 10 weeks beginning on July 20, 1942. While it does appear that there might be equities which plaintiff may have against Stephens, he cannot urge them against the defendant, the present bona fide holder of the note and mortgage in due course.
We find the judgment in reconvention to be correct and it will be affirmed.